| | |
|---|---|
| DISTRICT COURT, PITKIN COUNTY, COLORADO<br>Court Address: 506 E Main Street<br>Aspen, CO 81611<br><br>**Plaintiff(s):** Martin Kribs, Aspen Custom Ranch Enterprises, LLC<br><br>v.<br>**Defendant(s):** Ryan Graves, Mainland Ranch P1 LLC, Mainland Ranch P2 LLC, Mainland Ranch P3 LLC, Mainland Ranch P4 LLC, Mainland Ranch Holdings LLC, Mainlands Ranch Management. | DATE FILED: July 28, 2023 3:28 PM<br>FILING ID: DBA7BA896BA95<br>CASE NUMBER: 2023CV30074<br><br><br>▲COURT USE ONLY▲ |
| *Attorneys for Plaintiff*:<br>RIDER & QUESENBERRY, LLC<br>Stephanie Rubinstein, #27202<br>2764 Compass Drive, Ste. 101<br>Grand Junction, CO  81506<br>Telephone: (970) 257-1917<br>Facsimile: (970) 242-3749<br>stephanie@gjbusinesslaw.com | Case No.:<br><br><br>Div.: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiffs, Martin Kribs and Aspen Custom Ranch Enterprises, LLC, ("Plaintiffs"), by and through their attorneys, Rider & Quesenberry, LLC, for their complaint allege against Ryan Graves and Mainland Ranch P1 LLC, Mainland Ranch P2 LLC, Mainland Ranch P3 LLC, Mainland Ranch P4 LLC, Mainland Ranch Holdings LLC, Mainlands Ranch Management ("Defendants") as follows:

## I.     PARTIES

1. Plaintiff, Martin Kribs ("Kribs"), is an individual who resides in Basalt, Colorado.

2. Aspen Custom Ranch Enterprises, LLC ("ACRE") is a Colorado limited liability company with a principal place of business at 113 Crossland Ln, Basalt, CO 81621.

3. Defendant, Ryan Graves ("Graves"), is an individual.

4. Mainland Ranch P1 LLC ("Mainland Ranch P1") is a Colorado limited liability company with a principal place of business at 15 E. 26th Street, Suite 602, New York, NY 10010.

5. Mainland Ranch P2 LLC ("Mainland Ranch P2") is a Colorado limited liability company with a principal place of business at 15 E. 26th Street, Suite 602, New York, NY 10010.

6. Mainland Ranch P3 LLC ("Mainland Ranch P3") is a Colorado limited liability company with a principal place of business at 15 E. 26th Street, Suite 602, New York, NY 10010.

7. Mainland Ranch P4, LLC ("Mainland Ranch P4") is a Colorado limited liability company with a principal place of business at 15 E. 26th Street, Suite 602, New York, NY 10010.

8. Mainland Ranch Holdings, LLC is a Delaware limited liability company. Its principal place of business in unknown.

9. Mainland Ranch Management is, upon information and belief, an entity which is used to manage the project and the various properties owned by the various Plaintiffs.

## II.   VENUE AND JURISDICTION

10. The allegations in this Complaint took place in Pitkin County, Colorado.

11. Venue for this action is proper in Pitkin County, Colorado, pursuant to C.R.C.P. 98, and C.R.S. § 7-116-104.

12. This Court has jurisdiction over the subject matter and parties herein.

## III.   GENERAL ALLEGATIONS

13. In the summer of 2021, Kribs was employed by AVR AH LLC ("AVR") as general manager.

14. While Kribs was employed by AVR, Graves and Kribs met when Graves was renting a house there for the summer.

15. Graves offered Kribs a partnership and CEO role in a property management and development company Graves was founding.

16. As part of the offer, Graves and Kribs discussed Kribs' compensation and bonus package at AVR. Based on that discussion, and understanding of what Kribs was earning at that time, Graves offered Kribs a five-year contract that included 50% ownership in the partnership and compensation of $1,800,000.00 plus $2,000,000.00 in bonuses.

17. Graves desired to have Kribs solely employed by him, and made significant promises to entice Kribs away from his current employment.

18. Graves described to Kribs that the business of the partnership was to acquire, develop, operate and rent high end ranch properties for profit. Graves was in the

process of purchasing a ranch known as Flying Dog Ranch as the first property in the partnership portfolio.

19. Graves closed on the purchase of the property in October. Because the property came with time sensitive constraints, Graves was extremely anxious about getting started on design and permitting.

20. Graves assured Kribs that the partnership was in effect and guaranteed Kribs compensation package to entice Kribs to come to work in the partnership.

21. In order to form a partnership with Graves, Kribs understood that he would have to terminate his employment with AVR, because he could not be in a partnership with Graves and work for AVR at the same time.

22. Graves was aware that Kribs needed to terminate Kribs's employment with AVR in order to form the partnership. Graves and Kribs agreed that Kribs would quit his job at ACRE.

23. Kribs and Graves discussed the operating agreement and the general aspects of the partnership prior to Kribs terminating ACRE's employment by AVR and Ajax.

24. Prior to Kribs leaving his job at AVR, Graves forwarded a term sheet to Kribs outlining Kribs' role and compensation. Also at this time Graves corresponded with Kribs and his management team, including attorneys directing his counsel to finalize the legal documents per the agreement between Graves and Kribs.

25. Relying on the agreement with Graves, Kribs quit his job at AVR and began performing his work at Graves/Kribs partnership including hiring of employees and consultants and the purchasing of equipment. Graves told Kribs that Kribs' agreement to come work for the partnership was instrumental in Graves willingness to move forward with purchase of the Flying Dog Ranch property.

26. Kribs and Graves ultimately decided that the partnership would eventually be turned into an LLC that would be known as ACRE Engineering LLC.

27. It was Kribs's understanding that ACRE would serve as the contractor until a formal, written operating agreement between the parties could be memorialized. However, at this time, Kribs understood that a partnership existed between Kribs and Graves personally.

28. Graves formed the various Mainland Ranch entities, however, their roles were never made clear. It is believed that other entities may have been formed, after Kribs' termination, and Plaintiffs reserve the right to amend the pleadings to include these entities through the course of discovery.

29. Based on his understanding that a partnership existed between Kribs and Graves, and that the partnership was going to be formed into an LLC, Kribs hired

3

employees to work on the Flying Dog Ranch development project, and began working on the development project on July 22, 2021.

30. Further, Kribs expended time purchasing vehicles, hiring various service providers, and ensuring that the project would stay on time, to protect the vested rights related to the property.

31. Graves demanded that the project move forward without formal documentation in place.

32. Graves assumed sole responsibility for creating the legal documents for the partnership to be known as ACRE Engineering LLC. The schedule for completion of this legal work was intended to occur prior to close of the property.

33. Graves failed to complete the legal work in a timely manner and subsequently Kribs' company was used to hire the partnership employees and bridge operations until ACRE Engineering LLC legal work was completed. Once the legal work was complete, Kribs' company was to be absorbed by ACRE Engineering LLC.

34. Funding for the project was provided by Graves and Kribs provided the work per the verbal agreement. Graves reviewed and approved monthly draws that included discretionary funds for Kribs to be used to offset Kribs' risk during the time when partnership documents were being finalized.

35. In early November of 2021, Kribs still had not received an operating agreement regarding the partnership that he formed with Graves. Kribs voiced concerned about this to Graves.

36. On November 23, 2021, Kribs received a "term sheet" from Graves.

37. The "term sheet" was essentially an employment contract where Defendants agreed to hire ACRE as the general contractor for the Flying Dog Ranch development project.

38. This was the first time since Kribs terminated ACRE's employment by AVR and Ajax that Graves told Kribs that he was not going to partner with Kribs, but instead, agreed to employ ACRE to work on the Flying Dog Ranch development project.

39. At this time, Kribs understood that a partnership between Graves and Kribs had already been formed. Subsequently Graves proposed to Kribs that ACRE act as General Contractor for the construction of the project. This concept was never agreed to, and it was not adopted to replace the partnership.

40. The term sheet included terms that were far less favorable than the partnership Graves and Kribs formed, and the partnership that Graves had presented to Kribs

4

when Kribs agreed to terminate ACRE's employment by AVR to join Graves in a partnership.

41. Since Kribs had already left his employment with AVR and Ajax, and needed a source of income, Kribs attempted to negotiate in good faith an employment agreement with Graves.

42. Graves promised Kribs that the employment would be just as lucrative, if not more, than the partnership. There was no indication by Graves that additional projects were not forthcoming.

43. After receiving the contract, which were written heavily in favor of Graves, Kribs made minor changes to the contract that Graves presented and sent it back to Graves.

44. When Kribs sent the contract back, Graves immediately ceased negotiations with Kribs.

45. In March 2022, Graves locked Kribs out of the partnership company as an apparent strategy to deprive Kribs of the agreed compensation and 50% ownership of the value of the partnership company.

46. On March 24, 2022, Kribs received a letter of termination. For the first time, Graves alleged that Kribs had a conflict of interest with some subcontractors, that milestones in the project had not been met, that funds were mismanaged, and that Graves was not informed of a minor incident involving a power line. Kribs denies all of these allegations.

47. Kribs denies that there are any conflicts of interests.

48. Kribs provided updates which specifically detailing all expenditures, and requested weekly meetings with Graves. Graves became less and less interested in such meetings.

49. Kribs denies any milestones were not met. In October 2022, the development application was approved by Pitkin County. Such approval was due in large part, if not solely due to the up front work Kribs had done to putting together the application and insuring that the county requirements were met.

50. Thereafter, Graves ceased all discussions regarding the employment contract.

51. Graves then terminated Kribs and ACRE's employment.

52. It is apparent that Graves has worked in bad faith regarding the business dealings with Kribs, in order to avoid sharing in the value, equity and profit of the partnership and paying just compensation to Kribs for the work Kribs has done.

53. Graves locked Kribs out of the company without warning or any due process. Because of Graves bad faith and per the Agreement of a 5-year contract, the

5

balance of the compensation is due and payable. This includes $1,530,000 of annual compensation, plus $2,000,000.00 bonus compensation, plus 50% of the pro forma value of the partnership business.

54. Further, after Graves took these actions against Kribs, Graves, either individually or through an agent of one of the named entities, furnished Kribs with the vehicle title documents and then demanded that Kribs obtain titles for vehicles that were purchased for Graves. The work that was demanded of Kribs was intended to be completed in the normal course of Kribs employment which includes reimbursement and compensation for services provided. Subsequently the expectation from Graves is that Kribs continue to perform work at Graves request, without any compensation. Kribs has incurred attorney's fees and other costs due to this demand.

55. Following Graves' solicitation offers for employment to ACRE employees, Kribs's employees for ACRE, turned in their resignations and began working for Graves.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment pursuant to C.R.S. § 13-51-106 and C.R.C.P. 57)

56. Plaintiff incorporates all prior paragraphs of this Complaint.

57. C.R.S. § 13-51-106 states, "Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

58. A partnership is an association of two or more persons to carry on as co-owners a business for profit.

59. In September of 2021, Kribs, terminated ACRE's employment with AVR, to form a partnership with Graves.

60. Kribs and Graves agreed to form a partnership, and formed such a partnership, with the intent to engage in the business of construction/development, which is a business for profit.

61. Although the parties had not yet memorialized their agreement in the form of a written partnership agreement, and the parties had agreed to form an LLC which was to be known as ACRE Engineering LLC, such is not required to form a partnership. Furthermore, the parties were in the process of memorializing their partnership in a written operating agreement.

6

62. As such, a partnership existed when Kribs agreed to terminate his employment with AVR, and Kribs and Graves agreed to form a partnership in the business of construction/development.

63. The partnership has value and Kribs is entitled to his share of the partnership which has been formed.

64. Plaintiffs request the Court acknowledge the existence of the partnership, and the Parties rights therein.

## SECOND CLAIM FOR RELIEF
### Fraud in the Inducement Against Graves Personally

65. Plaintiff incorporates all prior paragraphs of this Complaint.

66. Under Colorado law, the elements of a claim for fraudulent inducement are: (1) the plaintiff's misrepresentation of a material fact; (2) the defendant's justifiable reliance on that representation; and (3) such reliance resulting in damage to the defendant. J.*A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007).

67. Graves made several material representations related to the work they were going to do together, including but not limited to that: a. they were forming a partnership; b. they were going to work on numerous projects developing properties as a part of that partnership; c. that the projects would be long term; and that the projects would be more lucrative for Kribs than Kribs' prior employment.

68. Kribs relied on these representations, which is evidenced by the fact that Kribs left his employment to work solely with Graves, leaving behind a significant bonus, as well as his salary and the projects that Kribs had on the horizon.

69. Graves never intended to enter into a partnership or pay Kribs the promised compensation, which is evidenced by the fact that as soon as Kribs pushed back against the agreement presented by Graves, Graves terminated the relationship altogether.

70. Further, Graves' reasons for terminating the agreements that were made were not based on reality, such as that Kribs was mis-managing funds, Kribs was creating issues with staff, and that Kribs had conflicts of interest, as described herein.

71. Kribs has been damaged by the actions taken by Graves in that he walked away from the employment he had, which included ongoing projects, and did not receive the compensation he was promised, in amounts to be proven at trial.

### THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty Against Graves Personally

72. Plaintiff incorporates all prior paragraphs of this Complaint.

73. "Partners in a business enterprise owe to one another the highest duty of loyalty; they stand in a relationship of trust and confidence to each other and are bound by standards of good conduct and square dealing." *Hooper v. Yoder*, 737 P.2d 852, 859 (Colo. 1987).

74. "Each partner has the right to demand and expect from the other a full, fair, open and honest disclosure of everything affecting the relationship." *Id.*

75. Kribs and Graves formed a partnership to engage in the business of construction/development.

76. As such, Kribs was owed a duty of loyalty from Graves, and Kribs had the right to demand and expect from Graves a full, fair, open and honest disclosure of everything affecting the partnership.

77. Graves breached the duty of loyalty to Kribs by terminating the partnership and instead offering him employment instead of a partnership.

78. Graves breached the duty of loyalty to Kribs by agreeing to form a partnership with Kribs prior to Kribs leaving his employment, and then later terminating the partnership.

79. Graves breached the duty of loyalty to Kribs by terminating the partnership and leaving Kribs without employment after Kribs left his employment to form the partnership. Graves had no valid reason for terminating the partnership relationship with Kribs.

80. Graves breached the duty of loyalty to Kribs by failing to pay him his share of the partnership funds after Graves terminated the partnership.

81. As a result of Graves's breach of the duty of loyalty, Kribs incurred damages and losses. Kribs left his employment to join Graves in the partnership, and when the partnership terminated, Kribs was left without employment.

82. As such, for the reasons stated herein, Graves breached the fiduciary duty he owed to Kribs.

83. Kribs has suffered damages due to these breaches in amounts to be proven at trial.

### THIRD CLAIM FOR RELIEF
### Negligent Misrepresentation

84. Plaintiff incorporates all prior paragraphs of this Complaint.

8

85. The elements of a claim of negligent misrepresentation are: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment. *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).

86. The actions alleged to be taken by Graves in the course of forming a management company for the purpose of developing real estate projects with Kribs was acting in the course of his business.

87. Graves misrepresented these intentions to Kribs, at a minimum without taking care to consider the terms thereof.

88. Graves' misrepresentations were for the purpose of enticing Kribs to leave his employment to form a partnership with Graves, as well as develop the ranch project, as well as Kribs' decision to leave his employment so that he could act upon Graves' desire for Kribs to work solely with him.

89. Graves was aware that if he wanted Kribs to work solely on the partnership and the ranch project, Kribs would have to leave his current employment, and was subsequently aware that Kribs left that employment to work solely with Graves.

90. Graves was also aware of the calculations upon Kribs relied in making this determination as there are text messages and term sheets which were for the purpose of conveying to Kribs substantial amounts of compensation that Kribs would receive if he left his employment to work solely with Graves.

91. Graves was aware that Kribs would rely on these representations.

92. Kribs was justified in relying on these representations.

93. Kribs did in fact rely on these representations in that he left his employment to work solely with Graves.

94. Kribs was damaged by these actions in amounts to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## Breach of the Covenant of Good Faith and Fair Dealing Against Graves Personally

95. Plaintiff incorporates all prior paragraphs of this Complaint.

96. Pursuant to C.R.S. § 7-64-404, "[a] partner shall discharge the partner's duties to the partnership and the other partners and exercise any rights consistently with the obligation of good faith and fair dealing."

97. Graves owed Kribs a duty of good faith and fair dealing as a partner in the partnership.

98. Graves breached that duty of good faith and fair dealing by forcing Kribs out of the partnership for no valid reason, and then terminating the partnership.

99. Kribs terminated his employment relationship with AVR based on representations made by Graves that the two would form a partnership. As such, Kribs walked away from bonuses and his salary, and is now in a position to rebuild his income source.

100. Graves breached the covenant of good faith and fair dealing by terminating the partnership for no valid reason and accusing Kribs of malfeasance when none existed.

101. As such, for the reasons stated herein, Graves breached the covenant of good faith and fair dealing.

102. Kribs suffered damages due to the actions of Kribs for the breach, in amounts to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Promissory Estoppel)

103. Plaintiff incorporates all prior paragraphs of this Complaint.

104. There are four elements to an estoppel: (1) The party to be estopped must know the facts; (2) this party also must intend that her conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to her injury.

105. Here, Graves knew of the facts. Graves knew that Kribs was employed by AVR. Graves knew that Kribs had to terminate Kribs's employment by AVR in order for Kribs to form a partnership with Graves.

106. When Graves and Kribs discussed forming a partnership, Graves intended for his conduct to be acted on by Kribs. Graves intended for Kribs to terminate Kribs's employment with AVR and Ajax so that the two parties could form a partnership.

107. Kribs was ignorant of the true facts. Kribs did not know that Graves did not intend for the two parties to form a partnership.

108. Kribs relied on Graves's representation that the two would form a partnership and suffered damages as a result. Kribs terminated Kribs' employment with AVR. After terminating Kribs's employment, Kribs learned that Graves did not want to form a partnership, and he was given an unfavorable employment contract. Later,

10

ACRE's employment was terminated by Graves, and ACRE and Kribs were left with no source of employment.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment

109. Plaintiffs incorporate all prior paragraphs of this Complaint.

110. Defendants have been unjustly enriched by the work Plaintiffs have done in furtherance of the Flying Dog Ranch, including but not limited to, formation of the development team, and the filing of the Amendment to the Land Use application, which created valuable vested rights on the project which allowed it to timely proceed.

111. "A person is unjustly enriched when [they] benefit as a result of an unfair detriment to another." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). To succeed on a claim for unjust enrichment, a party must demonstrate that: "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Id*.

112. Graves received the benefit of the work done by Kribs, as he, via ACRE, provided comprehensive services to Graves in the development of Flying Dog Ranch, while the Operating Agreement was being drafted.

113. These interim services were deemed necessary by Graves due to the schedule requirements from the Flying Dog Ranch vested development rights issue.

114. Kribs has not been compensated for the work that has been done. The typical, customary markup for services provided is 10%. Approximately $3,000,000.00 of costs were contracted through ACRE by Graves. Value of services up to the date of termination are $300,000.00.

115. ACRE LLC has also earned portions of the bonus plan developed by Graves and promised to Kribs/ACRE LLC, in amounts to be proven at trial.

116. Kribs has incurred additional costs after the relationship was terminated for title work which was done for the various vehicles purchased for Graves and/or the project.

117. Graves demanded this work be done, after the relationship was terminated, without expectation that Graves be compensated, which would be unjust.

118. It would be unjust for Graves to receive the benefit of the work done by Kribs and not compensate Kribs. Per Graves request, Kribs began this work without a written agreement, and Graves is now using that to his advantage to not compensate Kribs.

119. Kribs has been damaged in amounts stated herein and additional amounts to be proven at trial.

11

**JURY DEMAND**

Plaintiff hereby submits a demand for a jury trial pursuant to C.R.C.P. 38.

WHEREFORE, AND FOR THE FOREGOING, PLAINTIFF RESPECTFULLY REQUESTS:

A.A judgment against all Defendants for damages based on all claims in amounts to be determined at trial;

B.For pre and post-judgment interest;

C.For an award of costs and reasonable attorney's fees as provided by law;

D.Such other and further relief as this Court deems just and proper in the circumstances.

Dated the 25th day of June, 2023.

**RIDER & QUESENBERRY, LLC**

By: /s/Stephanie Rubinstein
Stephanie Rubinstein, No. 27202
*Attorneys for Plaintiff*

Plaintiff's Address: 113 Crossland Lane
    Basalt, CO  81621